STATE ACCIDENT FUND ET AL. *v.* THOMAS A. WINDSOR

[No. 20, September Term, 1971.]

*Decided September 28, 1971.*

The cause was argued before MORTON, ORTH and POWERS, JJ.

*Charles R. Goldsborough, Jr., Special Attorney for the State of Maryland,* with whom were *Francis B. Burch, Attorney General,* and *J. Howard Holzer, Special Attor-*

*ney for the State of Maryland,* on the brief for appellants.

No brief filed on behalf of appellee.

ORTH, J., delivered the opinion of the Court.

The question in this case is whether the claim of Thomas A. Windsor, employee (appellee), the State of Maryland, Maryland State Police, employer, the State Accident Fund, insurer (appellants) for benefits under the Workmen's Compensation Act was barred by limitations. The Workmen's Compensation Commission decided that it was not. The Circuit Court for Baltimore County at Law on appeal to it confirmed the decision of the Commission. The question is now before us on appeal from the judgment of the Circuit Court. Code, Art. 101, § 56 (a). But we do not now entertain a final order affirming, reversing or modifying the judgment. Rather, invoking Maryland Rule 1071, we remand the case to the lower court for further proceedings.

The determination of the question as presented involves three provisions of Code, Art. 101 entitled "Workmen's Compensation." Section 39 (a) provides in pertinent part: "* * * failure of an employee to file a claim for compensation within two years from the date of the accident shall constitute a complete bar to any claim under this article." However there are statutory provisions for the tolling of this limitation. Section 38 (c) prescribes: "Where the employer has been given notice, or the employer, or his designated representative in the place where the injury occurred, has knowledge of any injury or death of an employee, and the employer fails, neglects or refuses to file a report thereof, as required by the provisions of subsection (b) of this section, the limitations prescribed by this article shall not begin to run against the claimant or any person entitled to compensation until such report shall have been furnished as required by subsection (b) of this section." Section 39 (c) states: "When

it shall be established that failure to file claim by an injured employee or his dependents was induced or occasioned by fraud, or by facts and circumstances amounting to an estoppel, claim shall be filed within one year from the time of the discovery of the fraud or within one year from the time when the facts and circumstances amounting to an estoppel cease to operate and not afterwards."

It is not disputed that the date of Windsor's accident was 7 April 1967 and that his claim was filed on 23 October 1969. It is also apparent that the employer filed his first report of injury, but the question is when it was received by the Commission.

The case was presented to the Circuit Court on the record from the Commission.[1] It was certified to be truly taken from the records and proceedings of the Commission, and we set out in some detail the contents of the record. It consists of a number of documents, most of which are photostated copies. The first fourteen documents have the numbers (1) through (14) respectively written on them and they appear in that numerical sequence in the transcript of record from the Commission. The ones relevant to our inquiry are described.

(1) Copy of a completed "Employee's Claim" by Windsor. It is dated 14 October 1969. It stated the date of the accident to have been 7 April 1957 but subsequently this was shown, as is obvious from the form itself, to be a typographical error, the correct year being 1967. On

---

1. In the Circuit Court appellants moved for a summary judgment. Appellee elected to have the case tried by a jury. Code, Art. 101, § 56 (a) provides that upon proper motion the court shall "submit to a jury any question of fact involved." Appellee also filed a motion *ne recipiatur* with respect to the motion for a summary judgment claiming that the review of the action of the Commission was governed by subtitle B of the Maryland Rules of Procedure, "Administrative Agencies—Appeal From" and that summary judgment, see Maryland Rule 610, was not applicable. But at the hearing on the motion *ne recipiatur* appellee withdrew his motion for a jury trial and his motion *ne recipiatur*. Appellants withdrew their motion for a summary judgment. Thus no question concerning appellants' motion for a summary judgment is before us.

the form is written "10/23/69—SAF advised acc 4/7/ 67." At the upper right hand side of the form is a space not to be filled in by the claimant. It contains information, apparently written by Commission personnel. It gives the claim number, the insurance company and code number and the following:

|  | Yes | No |
|---|---|---|
| We have Employer's Report |  | X |
| Doctor's Report |  | X |

The form is stamped as received by the Commission "Oct 10:26 A.M. '69."

(2) Copy of a "Standard Form for Employer's First Report of Injury" completed by the Maryland State Police on Windsor's injury. It is dated 13 April 1967. It gives the date of injury as 7 April 1967. No stamp showing the date filed is discernible.

(3) Copy of a completed form of issues raised by the insurer dated 27 October 1969 and stamped as received by the Commission "Oct 29 9:44 A.M. '69."

(4) Copy of Notice of Hearing dated 14 November 1969. The decision written thereon under date of 4 December 1969 over the initials "WRH" is "Cont. Clmt in hosp Reset on request".

(5) Copy of form stating corrected issues raised by insurer dated 12 December 1969 and stamped as received by the Commission "Dec 13 8:20 A.M. '69".

(6) Copy of "Notice of Hearing" dated 8 January 1970 setting out the decision under date of 29 January 1970.

(8) Copy of Surgeon's Report dated 14 April 1967 signed by Dr. H. Calvin Kaufman. The stamp showing receipt by the Commission is barely discernible but "Apr '67" is legible. The space to indicate whether or not the Employer's Report was received is not filled out.

(9) Copy of Surgeon's Report dated 26 May 1967—signed by Dr. Clinton R. Harrison. It is stamped as received by the Commission "May 31 10:35 A.M. '67." The space to indicate whether or not the Employer's Report was received is not filled out.

Documents (10) to (14) inclusive are respectively copies of the order of award of compensation dated 2 March 1970; Notice of Appeal by Employer and Insurer dated 5 March and stamped as filed 6 March; petition on behalf of employer and insurer assigning basis for the appeal dated 6 March and stamped as filed 9 March; letter dated 13 March from the Commission to all parties informing them of the appeal to the Circuit Court for Baltimore County; answer of claimant stamped as filed "Apr 3 9:24 A.M. '70." The remainder of the record of the Commission consists of a form listing the Commissioners present and stating that "Claim proceedings instituted October 23, 1969;" a transcript of the hearing on 29 January 1970 at Princess Anne, Maryland before Commissioner William R. Hughes and the certification of the Secretary of the Commission dated 22 July 1970 that the foregoing was truly taken from the records and proceedings of the Commission.

At the Commission hearing it was stipulated that the claim form was received 23 October 1969. Windsor testified he was injured on 7 April 1967 and a first operation to remove two disks was performed on 10 April 1967. He stayed in the hospital about 10 days. "Then I returned home, after I returned home I had been home approximately a day, Mr. Fountain, for the State Accident Fund contacted me and ascertained full information as to what happened. I advised him that I had slipped on the, off the curbing at Pocomoke and removing luggage. And, he stated that at this time that it looked like it was, would be covered by the State Accident Fund due to the fact that it was an accident and for me not to worry about anything. That they would take care of all details." As far as can be determined from Windsor's testimony,

he later had a second operation to fuse the lower back. "Mr. Fountain again contacted me and wanted to know how I felt and I advised him that it was still sore. He asked me to try to bend over. I bent over. He stated that it looked like I would have anywheres from seven, from five to seven per cent disability. And, that the State would take care of me. I asked him if there were any information I had to submit. He advised me again that he would take care of anything that needed doing. If not, he would contact me. I later talked with the supervisor at Salisbury Barracks. [First Sergeant Dobson]. * * * I know he had been through a similar incident. * * * I knew it would have to be a form submitted. But, when he told me it would be, I rested assured because the State, whenever they tell us anything they stand behind what they tell us. And, I took him at his word." He was asked why he had not filed a form before 23 October 1969. He replied: "Because I was advised that—informed that they would take care of it. And I was of the opinion that they had it taken care of, the form."

The Commissioner asked when the employer's first report was filed. The transcript of the hearing before the Commission reads, pp. 17 and 18:

"MR. RUSSELL (Counsel for Employer and Insurer): Yes, sir. I think I can—employer's first report of injury was April 13th, 1967.
THE COMMISSION: When was it filed with the Workmen's Compensation Commission" That's the key to the thing.
MR. RUSSELL. It's received by—excuse me. This is all I have, Your Honor. I can't—
MR. SIMPKINS (Counsel for claimant): You have a thermafax copy?
THE COMMISSION: What are you doing with the original? It's the obligation of any employer to forward it to the Workmen's Compensation Commission.
MR. RUSSELL: Sorry about that.

MR. SIMPKINS: I have one here received—

MR. RUSSELL: That's not the same thing. That's a different one.

THE COMMISSION: The SF2 from the doctor was received in the Workmen's Compensation Commission, from Dr. Kaufman, was received April 18th, 1967. And, from Dr. Clinton Harrison was received May the 31st, 1967.

MR. RUSSELL: You don't have a copy of this?

THE COMMISSION: Oh, yes, I have a copy of it.

MR. RUSSELL: But, you should have gotten the original.

THE COMMISSION: I'm not concerned whether it's the original or a copy. The point involved is when it's filed with the Workmen's Compensation Commission.

MR. RUSSELL: Right. Right.

THE COMMISSION: Under the section as applicable to estoppel—

MR. SIMPKINS: 38.

MR. RUSSELL: 39.

THE COMMISSION:—that is to be filed when there is more than three days lost time.

MR. RUSSELL: I see. Well, but there was never any more than three days lost time because he was always paid by sick leave.

THE COMMISSION: The Statute doesn't say about how much he's paid, does it? Says lost time as a result of the accident. Is that a fair statement?

MR. RUSSELL: I suppose. Would you like to have this original and give me—

THE COMMISSION: Doesn't make any difference to me. I have a copy."

As noted the case on appeal, heard on 5 November 1970, was submitted to the Circuit Court on the record from the Commission. Arguments of counsel to the court

were not transcribed. Apparently, however, the question of estoppel was raised because in rendering its decision the court said: "Gentlemen, it seems clear to me that I need not go to the question of Mr. Fountain's authority to bind the Fund", patently relating to Windsor's testimony to the effect that Fountain said he would take care of everything that needed doing. There was no need in the court's view to go into that question because it found "manifest from the record that the Employer's report of the happening of an accidental injury, although prepared, and apparently signed on April 13, 1967, was never filed with the Commission until the date of the hearing before Commissioner Hughes on January 29, 1970; it is perfectly clear to me that that is so." Continuing, however, the court found "it is absolutely inescapable" that the employer's report was filed sometime during October 1969. It said:

> "Every paper in this file addressed to the Commission shows the date of receipt. And from my experience over the years, in compensation cases it is the invariable practice of the Fund to stamp the date of receipt. Now, wait a minute; maybe I'm wrong—no, I'm not wrong. The papers do not show the date of receipt by the Commission, no stamp—yes, there is, I beg your pardon—the first paper, and it is marked number 1, it's stamped by the Workmen's Compensation Commission October—I can't read it—but, in any event, it is some date in October, 10:26 a.m., '69; that is marked in this case as paper number 1, which is employee's claim. Paper number 2, which is the employer's first report of injury, is not stamped as to when it was received, but it is marked as paper number 2, which to me carries the inevitable inference that it was filed after paper number 1, and therefore must have been filed some time during or after October 1969. Paper number 3 is stamped Octo-

ber 29, 9:44 a.m., '69. I can find no indication of when paper number 2 was received; it is true that it is dated April 13th, 1967, and signed William J. Amberly. But taking the position of this particular paper in the file as being paper number 2, filed after paper number 1, which was filed in October 1969, couple that with Commissioner Hughes' inquiries and remarks on pages 17 through 18 [see *supra*], put those two together—although Commissioner Hughes did not state his reasons for finding that this matter was not barred by limitations—put them all together, and it is absolutely inescapable that the Employer's report was filed some time during October 1969."

Applying the provisions of § 38 (c) the court affirmed the order of the Commission.

The next day, 6 November, appellants filed a motion for a new trial. They gave as reasons:

"1) That said judgment was against the evidence.

2) That said judgment was against the weight of the evidence, in that Employer's First Report of Injury was in fact filed with the Workmen's Compensation Commission on April 14, 1967, as per the attached certificate.

3) That there was no evidence legally sufficient to support the verdict of the Court.

4) That the Court gratuitously drew inferences not supported by the evidence in that the numeral '2' written on the said Employer's Report of Injury had no relation to the sequence or order of filing papers with the Commission as assumed by the Court, as per the attached Affidavit.

5) That the Employer and Insurer have newly discovered evidence."

The certificates referred to and attached to the motion

were by Daniel T. Doherty, Chairman of the Workmen's Compensation Commission. Each was dated 6 November 1970, signed by Doherty and attested by the Secretary of the Commission with the Commission's Seal affixed. The first read:

> "I HEREBY CERTIFY that I am the Chairman of the Workmen's Compensation Commission of Maryland and am competent to testify to the facts herein set forth, namely that the numeral '2' hand written and encircled in the lower left hand corner of the Employer's First Report of Injury in the above captioned case has no relation to the sequence or order in which the said Report was filed, but rather said numeral is an interoffice notation relating only to the number of papers to be photocopied for the purpose of making a copy of the record for the court on appeal."

The second read:

> "I HEREBY CERTIFY that the attached is a true copy of the workmen's compensation Employer's First Report of Injury form filed by the Maryland State Police with the Workmen's Compensation Commission of Maryland in re: the claim of Thomas Aaron Windsor, and further,
> I HEREBY CERTIFY that said Employer's Report form was filed with the said Workmen's Compensation Commission of Maryland at 10:16 a.m. o'clock on the 14th day of April nineteen hundred and 67. As witness my hand and seal of the Workmen's Compensation Commission of Maryland this 6th day of November 1970."

Attached was a copy of the same document appearing as number (2) in the record of the Commission before the court.

A hearing on the motion was held on 19 November. The court stated that it had known Mr. Doherty "for many, many years, and I know he would not consciously mislead the Court, and I cannot accept as being correct the certification as to the numbering and sequence of the document." After argument the court said: "But without belaboring the thing, it is absolutely inevitable these things [the numbers on the documents] mean they were numbered in that order. * * * It is absolutely clear to me, in spite of Mr. Doherty's certification, that these things are filed as indicated - - -." After more argument it seemed that the court discovered the date of receipt appearing on documents (8) and (9). It said: "Well, I take it back, I obviously am wrong about the meaning of the figures on those papers, I rescind my conclusion in that regard, because on page number 9 there is a stamp, May 31st, 10:35 a.m. '67, surgeon's report * * * and there is another surgeon's report, it looks to me like it's April something, 1967, I can't make out the date." But the court added:

> "But that still doesn't get the Fund around the records of the Commission itself; to wit, that when the Employee's claim was filed on October something, 1969, the Commission did not have, according to its own notation, did not have an Employer's report. So, gentlemen, that is the clincher, and the motion for a new trial will be overruled."

This conclusion completely disregards the certification of the Chairman of the Commission that the Employer's Report in question was filed with the Commission at 10:16 A.M. on 14 April 1967. And we observe that the "clincher" was at best suspect. There was also on document (1) in the same space containing the notation that the Commission did not have the employer's report, a notation that it did not have the doctor's report. This latter notation was patently incorrect as the prior re-

ceipt of the doctors' reports was shown on the face of those reports—documents (8) and (9). At least some inquiry was advisable on the accuracy of the notation with respect to the receipt of the employer's report.

In the light of this record it clearly appears to this Court that the substantial merits of the case will not be determined by affirming, reversing or modifying the judgment from which this appeal was taken but that the purposes of justice will be advanced by permitting further proceedings in the cause. We therefore remand the case to the lower court for further proceedings and through the introduction of additional evidence or otherwise as may be necessary, the court shall determine:

> (1) whether the employer's report was filed as required by Code, Art. 101, § 38 (b) ; and
>
> (2) if the employer's report was so filed, whether Windsor's claim for compensation was filed within two years from 7 April 1967, the date of the accident; or
>
> (3) if the employer's report was not so filed, the date it was filed; and
>
> (4) whether Windsor's claim for compensation was filed within two years from the date the employer's report was filed; and
>
> (5) in any event if Windsor's claim for compensation was not filed within the two year period under either (2) or (4) whether the failure to so file it was induced or occasioned by fraud or facts and circumstances amounting to an estoppel; and
>
> (6) if so whether the claim was filed within one year from the discovery of the fraud or within one year from the time the facts and circumstances amounting to an estoppel ceased to operate.

Then, as if no appeal had been taken and the judgment from which the appeal was taken had not been entered, the lower court shall determine upon its merits whether

or not Windsor's claim was barred by limitations. Rule 1071.

*Case remanded for further proceedings in accordance with this opinion; costs to be paid by appellants.*